IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2021 Session

## RASHAD DEWAYNE SEAY, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Wilson County**
**No. 11-CR-689          Brody N. Kane, Judge**

_____

**No. M2020-01287-CCA-R3-PC**
_____

A Wilson County jury convicted the Petitioner, Rashad Dewayne Seay, Jr., of two counts of the sale of .5 grams or more of a Schedule II controlled substance, and the trial court sentenced him to consecutive sentences of eighteen years for each offense. The Petitioner timely filed a petition for post-conviction relief, which the court summarily dismissed as untimely. On appeal, we reversed the summary dismissal. *Rashad Dewayne Seay, Jr. v. State*, No. M2017-01128-CCA-R3-PC, 2018 WL 3203442, at *1 (Tenn. Crim. App., at Nashville, June 29, 2018), *no perm. app. filed.* On remand, the post-conviction court held an evidentiary hearing after which it filed a written order denying the Petitioner relief. On appeal, the Petitioner contends that the post-conviction court erred because his trial counsel was ineffective for failing to ensure the Petitioner was present during the jury instructions, failing to ensure that the jury was properly instructed, failing to adequately investigate and prepare an identification expert, and failing to inform the Petitioner of the consequences of withdrawing his direct appeal. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. Ross DYER , JJ., joined.

Shane K. McNeil, Thompson's Station, Tennessee, for the appellant, Rashad Dewayne Seay, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; and Jason L. Lawson, District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from two drug sales that occurred in 2010. In relation to these sales, a Wilson County grand jury indicted the Petitioner on two counts of selling .5 grams or more of a Schedule II controlled substance, cocaine. The Petitioner's case proceeded to trial, and we briefly summarize the facts presented therein.

A detective with the Mt. Juliet Police Department, Frank Deriggi, testified that he worked in the Narcotics Unit at the time of these drug sales. Detective Deriggi said that, before these sales, he had executed an unrelated search warrant in which a man was arrested. The detective contacted the man's ex-girlfriend, Lori Douglas, in an attempt to determine where the man was obtaining his drugs. Ms. Douglas then became a confidential informant, working for pay for the police department, which paid her $150 per buy. Through this relationship, the Detective learned that the Petitioner may have been involved in drug sales.

On December 16, 2010, Ms. Douglas contacted Detective Deriggi and said that the Petitioner had crack cocaine for sale. Ms. Douglas contacted the Petitioner while in the presence of law enforcement, and the two agreed to an exchange of $175 for an "eight ball" of cocaine and further agreed to meet at the home of a mutual friend to complete the drug transaction. The detective, acting as an undercover officer, drove Ms. Douglas to the location. There, the two identified the Petitioner, and then Ms. Douglas exited the detective's vehicle and got into the passenger seat of the Petitioner's vehicle. From the detective's vantage point, he could see the two exchange the money for drugs. Ms. Douglas then exited the Petitioner's vehicle and reentered the detective's vehicle, and she handed the detective the drugs. Detective Deriggi sent the drugs to be analyzed. After the drug transaction, two other detectives followed the Petitioner back to a road in Lebanon.

On January 13, 2011, Ms. Douglas contacted the detective and informed him that the Petitioner had contacted her about purchasing drugs. Ms. Douglas and the Petitioner agreed to the sale of an "eight ball" of crack cocaine in exchange for $175. This transaction was set to occur in Lebanon, Tennessee, and there were officers viewing the drug transaction from concealed locations. Detective Deriggi said that the battery of the recording equipment went low, and he was unable to change the battery before the Petitioner approached their vehicle. Shortly thereafter, the detective saw the informant and the Petitioner exchange money for drugs. Immediately after the transaction, the informant returned to the detective's vehicle and gave him the substance she had purchased. Detective Deriggi watched as the Petitioner went into the grocery store.

Detective Deriggi personally identified the Petitioner during both drug transactions and also in court.

The confidential informant testified at trial, and her testimony corroborated that of the detective. The detective's testimony was also corroborated by another officer, Justin

Cagle, whose job it was to conduct surveillance during the December 16, 2020, and January 13, 2021, drug transactions.

Tennessee Bureau of Investigation Crime Laboratory agent, Patty Choatie, testified that she tested the substances purchased during these drug transactions. The substance purchased on December 16, 2020, was 3.2 grams of cocaine. The substance purchased on January 13, 2021, was 2.5 grams of cocaine.

At the conclusion of the trial, the jury convicted the Petitioner as charged. The trial court imposed two consecutive eighteen-year sentences.

The Petitioner appealed his convictions and then voluntarily dismissed his appeal. *Rashad Dewayne Seay Jr.*, 2018 WL 3203442, at *2 (citing *State v. Rashad Dewayne Seay, Jr.*, M2014-00456-CCA-R3-CD (Tenn. Crim. App. 2014) *app. dismissed* (Dec. 3, 2014)).

## B. Post-Conviction

The Petitioner filed his petition for post-conviction relief on March 9, 2015. The post-conviction court summarily dismissed his petition as being time barred. The Petitioner appealed to this court, and, on appeal, both the State and the Petitioner agreed that the trial court had erred. *Rashad Dewayne Seay*, 2018 WL 3203442, at *2. We agreed, finding that the "the final action of the highest state appellate court to which an appeal was taken occurred on December 3, 2014, when this court dismissed the Petitioner's direct appeal," so that was the date that the Petitioner's statute of limitations for filing a post-conviction petition began to run. *Id.* Accordingly, we reversed the judgment of the post-conviction court and remanded the case for an evidentiary hearing on the petition. *Id.*

On remand, the post-conviction court held a hearing during which the parties presented the following evidence: Counsel testified that he represented the Petitioner preceding and during his trial. Counsel received and reviewed discovery and investigated the case. Counsel recalled that the one defense he considered was that of mistaken identity. He expounded that the Petitioner's son, who had the same name as the Petitioner, was also investigated by law enforcement. In further support of this defense, Counsel noted that the law enforcement officer's description of the Petitioner differed from the driver's license photo presented at trial by law enforcement.

Counsel said he also defended the case by noting that the officers' testimony was not viable or accurate and that there was no video or audio recording that clearly depicted the drug transaction.

Counsel said that he did not recall a jury question being asked in this case. He said that, in the event of a jury question, it was the practice of the judge to have the foreperson prepare a written question, which would be brought out by the bailiff. The judge would

3

then call the parties into the courtroom, discuss the question on the record, and an answer would be provided to the jury. Counsel did not recall consenting to the judge communicating with the jury without Counsel being present.

After having his memory refreshed, Counsel noted that it appeared that the jury had a question about the fine, specifically whether or not the judge set the fine. The record appeared to indicate that Counsel waived the question, allowing the judge to speak to the jury without bringing them back into the courtroom. Counsel explained that he did not have any concern about whether that question would affect the outcome of the case. Counsel said that if the Petitioner was present next to him, he would have consulted the Petitioner about this decision.

During cross-examination, Counsel testified that, at the time of the Petitioner's trial, the Petitioner had other drug charges pending, including one related to a traffic stop. He also learned the day of trial that there was another case that involved a different law enforcement agency who had used a different informant to conduct an undercover drug buy from the Petitioner.

About the question to the jury, Counsel said that he did not think that a question about the fines involved in the case would affect the outcome of the jury verdict. The question posed by the jury was whether or not they would set a fine on each count in which they found the Petitioner guilty or if they should set one fine. The record indicated that the trial judge called all of the parties into the courtroom, including the Petitioner, and discussed the question and the proposed answer to the question. The trial judge then said that he was going to step back into the jury room and tell the jury the answer. The Petitioner never indicated any hesitation about the trial judge stepping back to instruct the jury. Counsel said that he had no information to indicate that the trial judge did anything other than instruct the jury as he had said that he would.

Counsel said that he filed the Petitioner's motion for new trial after his conviction. The Public Defender's Office then, however, took over the case. The Public Defender's Office represented the Petitioner on appeal and also on the other charges that were pending against him.

Counsel testified that he filed a written request with the State to obtain the audio and video recordings of the transactions, and the State gave him all of the information that it had. During the trial, he cross-examined the officers about why a recording did not exist of the second transaction.

Appellate Counsel testified that his office was appointed to represent the Petitioner in his direct appeal and also on the other charges pending against him. He said that he did not file a brief for the Petitioner's appeal because the Petitioner withdrew his appeal in light of the State dismissing the other charges against him. He explained that the Petitioner

4

was facing other charges against him, and that the State offered to dismiss those charges if the Petitioner withdrew his appeal. Appellate Counsel discussed this with the Petitioner "a couple of times," and, the day before a deadline on the appeal, the Petitioner decided to dismiss the appeal in exchange for the State dismissing the other charges against him. Appellate Counsel said that the Petitioner was fully informed of the consequences of the withdrawal of his appeal.

During cross-examination, Appellate Counsel testified that he gave the Petitioner the pros and cons of withdrawing his appeal and allowed him to make his own decision. He said that his decision was voluntary and the Petitioner's own choice. The Petitioner had five charges dismissed, including multiple counts of manufacturing and possessing a Schedule II drug and multiple counts of driving on a suspended license. The Petitioner executed an affidavit saying that he was of sound mind and that he was making an informed, voluntary decision to dismiss his appeal. The affidavit indicated that he fully understood his rights, and Appellate Counsel said that he had explained those rights to him.

The Petitioner testified that he believed that the trial judge tampered with the jury. He said that, while the jury was deliberating, the trial judge came out and said that the jury had a question. The parties agreed that the trial judge could go back to the jury room and answer the question. The Petitioner expressed some concern at the time, but Counsel told him that everything was going to be okay. The judge then briefly went back and spoke with the jury.

The Petitioner said that Appellate Counsel, who was appointed, called him and said that he had to have a final decision about his appeal that day. Appellate Counsel said he needed to know right then if the Petitioner was going through with his appeal because the State was "trying to get him" sixty more years for the other pending charges. The Petitioner said that Appellate Counsel never came to visit him but faxed him the relevant information on the day that the Petitioner was to decide. The Petitioner said that Appellate Counsel never sat down with him and discussed what was being put into the paperwork about the withdrawal of his appeal.

The Petitioner recounted that he felt his appeal had merit. He said that there was no audio or video evidence. He noted that there was also no phone call or text message evidence.

During cross-examination, the Petitioner agreed that he had nineteen prior misdemeanor convictions and five prior felony convictions. The Petitioner disputed Appellate Counsel's claim that the two had discussed the motion to withdraw his appeal. He said the only conversation that they had was the day he was to decide and sign the faxed paperwork. He agreed that he made the decision to withdraw his appeal but said his decision was based on Appellate Counsel telling him that the State was trying to get him sixty more years of incarceration.

5

About the alleged trial judge tampering, the Petitioner agreed that he had not proven that the judge said something to the jury other than the agreed instruction regarding fines. He, however, said that the trial judge "could have said something different too."

Counsel was recalled, testified, and identified the notice to seek enhanced punishments filed by the State before the Petitioner's trial. He said that eleven offenses were listed on the notice and gave notice that the State considered the Petitioner a Career Offender. He said that he met with the Petitioner and discussed this fact, which was a factor in his decision to go to trial. Counsel said he did not present the video recording of the incident to the jury because the video was blank. The equipment had malfunctioned and there was no video or audio on the recording. He said he used this to argue to the jury that there was a lack of evidence tying the Petitioner to the drug sale.

Counsel described his theory of defense for the case saying:

I think Officer Deriggi testified that he was aware that there's another Rashad Seay out there selling drugs. And my position, you've got the wrong guy. I've got a driver's license that does not match the description provided by the CI. I've got a detective saying he saw this guy through the back rear view mirror 70 yards away and he's positive it's Rashad Seay. However, the testimony was he had a hood – a jacket with a hood that had like fur on it pulled over so he couldn't identify him. So that was kind of the argument.

Counsel opined that the jury got the case wrong, given the lack of evidence against the Petitioner. He agreed that it was possible to hire an expert witness to question the reliability of eye-witnesses but said that he did not think that such was necessary in this case.

Counsel said that the Petitioner maintained throughout the course of Counsel's representation that he wanted to go to trial.

The post-conviction court denied the Petitioner's petition, making the following factual findings:

**Denial of effective assistance of counsel:** Petitioner alleges the dismissal of direct appeal by Appellate Counsel was ineffective. The Petitioner after being convicted of the instant charges and then sentenced to thirty-six (36) years was faced with a decision. Petitioner could pursue a direct appeal, **as of right**, of the conviction and seek reversal based on the alleged errors of the Trial Court the jury the District Attorney, his own private attorney or the Public Defender appointed to his appeal, **or** he could accept an offer made by the state's attorney to dismiss his direct appeal, accept the thirty-six (36) year sentence rendered and have the remainder of his pending

6

charges dismissed by the state. Petitioner decided on the latter, having nineteen (19) prior misdemeanor convictions and five prior felony convictions. Petitioner is well acquainted with the give and take of how plea bargains work. The Court finds Petitioner was well aware of his options, including his potential for a successful appeal and his potential criminal exposure if convicted on two (2) additional Class B felony drug charges as well as additional misdemeanors.

Petitioner testified he had to make the above decisions the very day of the deadline. However, the dates of Appellate Counsel's affidavit was two (2) days prior to Petitioner's affidavit. The Court find Appellate Counsel's testimony to be consistent with the sworn affidavits and Petitioner's testimony to be contradictory.

Petitioner also alleges Respondent Trial Counsel was ineffective in failing to hire and call an expert on eyewitness testimony.

. . . .

This was clearly a strategic decision made by an experienced trial lawyer. This Court is precluded from judging strategic decisions with the benefit of 20/20 hindsight. Trials are filled with strategic decisions and to hold counsel to retroactive application of "perfection" is not required by the law nor should it be. Some work and some don't and this court has no way of knowing whether an expert would have made one iota of difference. This issue is found in favor of Respondent Counsel.

. . . .

**Prosecutorial misconduct judicial misconduct and jury tampering:**

Proof was presented as to how a jury question was handled at the trial. The question concerned how fines applied to each count. . . . The Court went back and spoke to jurors in the deliberation room without the presence of counsel. Though the actions of the Trial Court are not preferred, they were taken with the consent of Counsel after the question, the answer and the Court's request to speak to the jury in the deliberation room were discussed and agreed upon. Respondent Counsel did not recall the event in his testimony. The Petitioner did not recall the event and was upset he was not asked directly at the time if he was in agreement with the Court's request. The Court understands the Petitioner being uncomfortable with how it was handled. However, this Court cannot find Respondent Counsel's agreement

with the Judge to be outside the range of reasonable legal representation. Each attorney was satisfied that the question was being answered adequately. Moreover, the issue addressed did not concern Petitioner's guilt or innocence, merely how the fines should be handled. Further Petitioner admits he made no request of Respondent Counsel to demand the discussion take place in open court. There is no proof offered that anything untoward or prejudicial was said to the jury or that anything was said other than exactly what Judge Durham stated that he would say. Absent sworn testimony or a juror affidavit to the contrary, this Court cannot find there was judicial misconduct or judicial tampering. Petitioner bears the burden of proof and failed to meet that burden. As far as the prosecutorial misconduct claim, Petitioner put forward no proof on that issue. For these reasons this issue is found in favor of Respondent Counsel.

. . . .

Based upon the reasoning set forth above the Court cannot find that the right to effective assistance of counsel guaranteed to Petitioner was not provided. In fact, the Court finds the opposite is true.

The essential issue in a Petition alleging ineffective assistance of counsel is whether [the Petitioner's] attorney's representation fell below an objective standard of reasonableness for criminal attorneys. The Petitioner has failed to meet his burden on this issue, but as to the Trial Counsel and Appellate Counsel for the reasons set forth above. The court also finds that the prejudice prong must also fail for lack of clear and convincing proof that Respondent's alleged defective performance was in any way prejudicial. The proof in the trial was decided by the jury based upon witness credibility and convincing evidence, and a finding of not guilty of the convicted crimes would not have been in keeping with that proof. There is simply no evidence that the actions or inaction of Trial Counsel prejudiced Petitioner.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred because his trial counsel was ineffective for failing to ensure the Petitioner was present during the jury instructions, failing to ensure that the jury was properly instructed, failing to adequately investigate and prepare an identification expert, and failing to inform the Petitioner of the consequences of withdrawing his direct appeal.

8

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim of ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, while taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v.*

*Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The Petitioner first contends that Counsel was ineffective for failing to ensure the Petitioner was present when the trial court instructed the jury regarding its jury question about whether the fines should be set individually or all together. He asserts this was an inappropriate *ex parte* communication. The record indicates that the jury asked a question about the fines. The trial judge spoke with the parties, who agreed that the answer was that the fines were based on the range for each individual count. The judge told the parties he was going to instruct the jury as follows: "the fine is separate for each count, and like the verdicts, they can fine one count, both counts, or no counts but they can only set a fine if there's a finding of guilty in that particular count." The trial judge asked the parties if they would be okay if he went back to the jury room and provided the jury that answer. Neither party objected.

While we agree with the post-conviction court that the preferred method would be to instruct the jury while both parties were present, we do not find that the trial court's failure to so do, and Counsel's failure to object, in any way undermined our confidence in the outcome. *See Strickland*, 466 U.S. at 694. This question did not go to the heart of the

10

Petitioner's guilt. Further, the Petitioner has not offered any proof that the trial judge did anything other than instruct the jury as agreed to by the parties. Accordingly, we conclude that the Petitioner has not proven that he is entitled to post-conviction relief on this claim.

The Petitioner next contends that Counsel was ineffective for failing to adequately investigate and prepare an identification expert. Counsel testified that he cross-examined the eyewitnesses about their ability to see what they testified they had seen. He said that the issue was not one of whether the eyewitness testimony was reliable but rather whether the eyewitnesses were credible in saying they could see the drug transaction from their respective vantage points. He did not think that expert testimony would aid him in this regard. We conclude that the Petitioner has not proven that Counsel was ineffective in this regard. As previously stated, Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams*, 599 S.W.2d at 279-80. The Petitioner is not entitled to relief on this issue.

The Petitioner finally contends that Appellate Counsel was ineffective for failing to inform the Petitioner of the consequences of withdrawing his direct appeal. The Petitioner himself said that it was his decision to withdraw his appeal and that he got the benefit of that bargain but that he did not understand all the implications of his withdrawal. Appellate Counsel testified and said that he discussed the consequences with the Petitioner on multiple occasions and that the Petitioner understood the consequences of his decision. The trial court found Appellate Counsel credible and consistent with the submitted affidavits and the Petitioner's testimony to be inconsistent with the affidavits. All questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon*, 18 S.W.3d at 156. We conclude that the Petitioner has not proven that Appellate Counsel was ineffective in this regard.

As such, we conclude that the evidence supports the post-conviction court's findings, and the Petitioner is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

11